1

2

3

4

5        **UNITED STATES DISTRICT COURT**

6        **EASTERN DISTRICT OF CALIFORNIA**

7

8    TRACI DIANE GRISCHOTT,                    CASE NO. 1:14-CV-736-SMS

9                      Plaintiff,

                                               ORDER AFFIRMING AGENCY'S
10           v.                                DENIAL OF BENEFITS AND ORDERING
                                               JUDGMENT FOR COMMISSIONER
11   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
12                                             (Doc. 16)
                     Defendant.
13

14

15          Plaintiff Traci Diane Grischott, by her attorney, Jacqueline A. Forslund, seeks judicial

16   review of a final decision of the Commissioner of Social Security ("Commissioner") denying her

17   application for disability insurance benefits pursuant to Title II of the Social Security Act (42

18   U.S.C. § 301 *et seq.*) (the "Act"). The matter is currently before the Court on the parties' cross-

19   briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United

20   States Magistrate Judge.  Following a review of the complete record and applicable law, this Court

21   finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial

22   evidence in the record as a whole and based on proper legal standards.

23       I.    **Background**

24          A.  Procedural History

25          On December 13, 2010, Plaintiff applied for disability insurance benefits.  Plaintiff alleged

26   an onset of disability date of October 27, 2010. The Commissioner initially denied the claims on

27   November 3, 2011, and upon reconsideration again denied the claims on May 1, 2012.  On May

28   24, 2012, Plaintiff filed a timely request for a hearing.

On January 15, 2013, and represented by counsel, Plaintiff appeared and testified at a hearing presided over by Trevor Skarda, Administrative Law Judge ("the ALJ").  See 20 C.F.R. 404.929 et seq.  An impartial vocational expert, Lorian Hyatt ("the VE"), also appeared and testified.

On February 15, 2013, the ALJ denied Plaintiff's application.  The Appeals Council denied review on March 12, 2014.  The ALJ's decision thus became the Commissioner's final decision. See 42 U.S.C. § 405(h).  On May 15, 2014, Plaintiff filed a complaint seeking this Court's review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

B. Plaintiff's Testimony

At the administrative hearing, Plaintiff was forty-five years old. She had graduated from high school. She worked as a loader for a crop duster for twenty years, until she hurt her back on the job and had to stop. She had a lumbar fusion surgery in 2006 and was able to go back to work for another two years. After two years of working, she had another back injury. Since her second injury, she had only worked for one week at a Goodwill store warehouse, loading and unloading, but she did not continue because her back bothered her, and she did not have transportation.

Plaintiff testified that she had constant pain in her entire left leg, which was not alleviated with medication. Her leg would go numb and then it felt like needles were being stabbed into her leg. She also had pain in her low back which felt like being stabbed with a knife. However, her back pain was alleviated with medication. Plaintiff testified that she had "no pain" for about four hours, while the medication lasted. She took the medication every four hours. Upon probing by her attorney, Plaintiff further testified that her back pain was reduced to seven on a scale of one-to-ten when taking medication, but was ten out of ten when not taking medication. The pain worsened when she exerted herself. Plaintiff testified that her surgeon wanted to re-do the lumbar fusion surgery.

Plaintiff testified that she believed she had a torn rotator cuff in her left shoulder, which precluded her from reaching overhead. She testified that she could not reach out with both hands to get something off of an assembly belt on a regular basis. She could not pick things up or extend fully. However, she also demonstrated that she could reach forward.

Plaintiff also testified that she had migraines for over twenty years, and at the time of the hearing they occurred about three times a week. They would last all day on average, but one lasted for four days. When she has a migraine she takes medication and stays in bed in the dark and without noise. Her migraines caused her to miss work while she was working and have gotten worse in frequency and duration since she stopped working. She had been taking medication for migraines for about ten years. In December 2012 she went to the emergency room for a particularly bad migraine, which was not alleviated by medication. That evening she felt the headache come up the back of her neck and had severe back pain. She felt as though her head was going to explode. She could hardly walk and she had to call an ambulance.

Plaintiff lived alone in a hotel. She usually would get up around 7:00 a.m., eat breakfast, get dressed, and let her two dogs out. Friends would take her to the store to run errands. She would watch TV. She had to elevate her legs with ice about three times a day for twenty minutes at a time. She would alternate ice with heat. She spent about five out of eight hours lying down with elevated feet. She could sit for about twenty minutes before her left leg would go numb and she would have to stand up. She could stand for about fifteen minutes and walk about two blocks. She could lift less than five pounds.

C.  Relevant Medical Record

Plaintiff received regular treatment from Kenneth I. Light, M.D., an orthopedic surgeon in San Francisco, from 2006 through 2012. She saw Dr. Light approximately once every two months, with an apparent year-long exception in 2009-2010. Discussions regarding her lack of insurance were frequent. In October 2006, Dr. Light indicated that her ongoing severe back pain was unresponsive to conservative treatment including chiropractic treatment, injections, and physical therapy. He noted degenerative disc disease and some facet joint arthritis. In November 2006, Dr. Light recommended disc replacement, but would consider spinal fusion as the second best treatment. Plaintiff underwent spinal fusion surgery and was doing "reasonably well" in early 2007 with medication for nerve pain. Her pain varied, but overall improved, and examinations showed normal sensory, motor, and deep tendon reflexes. Dr. Light recommended that she walk and exercise.

In July 2007, Plaintiff returned to work with a forty-pound lifting restriction. At her scheduled appointment in August 2007, she indicated that her pain had increased likely to a flare-up of her back condition, and Dr. Light recommended that she take her medication as judiciously as possible and prescribed an additional pain medication.

In February 2008, Plaintiff twisted her back and felt pain in her upper back. Examination demonstrated that she could walk on her heels and toes, and forward flex touching her hands to her shins. Her fusion was solidly healed and CT scans looked very good. Electromyogram and nerve conduction studies were normal. Dr. Light prescribed medication for headaches related to her back. In April 2008, Dr. Light recommended that she take six weeks off work due to increasing back pain and sciatica involving her leg. In June 2008, her pain had been unresponsive to high doses of medication. Examination showed tenderness around the lumbar spine and had restricted flexion and abduction of the spine. She could on reach just below the knee level. MRIs of the thoracic and lumbar spine were unremarkable, which Dr. Light believed was slightly inaccurate. Plaintiff could touch her hands to her shins. Dr. Light released her to work in July 2008, but found her 30% disabled based on restricted flexion and extension of the spine and her spinal fusion.

In September, October, and December 2008 and March 2009 Plaintiff saw Dr. Light for pain. He sometimes injected pain medication into her spine area. In April 2010, she hurt her hip while playing golf. Her examinations were normal. In 2010 and 2011, her shoulder appeared to worsen, with tenderness and requiring injections. In February 2011 she twisted her ankle. In about April 2011, she fell off a ladder and noted increasing pain in her back. In June 2012 and January 2013, Dr. Light discussed decreasing the use of medication and taking as little pain medication as possible.

In October 2011, consultative examiner Dale H. Van Kirk, M.D., performed a comprehensive orthopedic evaluation and prepared a written report. Dr. Van Kirk discussed Plaintiff's medical history, daily activities, and medications. He observed that she was pleasant and in no acute distress. She got in and out of the chair and on and off the examination table without difficulty. Dr. Van Kirk assessed mostly normal physical observations. Plaintiff was able to squat down and take a few steps. Regarding her lumbar spine, she was able to bend and reach

1    toward the floor. Regarding her left shoulder, she had moderate pain over the shoulder girdle and

2    slight pain over the bicipital grove anteriorly. Dr. Van Kirk found that her left shoulder had a full

3    range of motion. He diagnosed her with post-surgical decompression and fusion of the lumbar

4    spine with residual and recurrent pain with radiation down the left side greater than the right side.

5          Dr. Van Kirk made a functional assessment based on his findings. He opined that Plaintiff

6    could stand and or walk cumulatively, with brief periodic sitting breaks, for four hours out of an

7    eight-hour day. He opined that she could sit cumulatively for six hours of an eight-hour day. He

8    recommended that she use a lumbosacral corset when she was out and about. He opined that she

9    could lift and carry ten pounds frequently and twenty pounds occasionally due to her low back

10   pain with radiation down the legs. He also limited Plaintiff to occasional bending, stooping,

11   crouching, climbing, kneeling, crawling, etc., due to her low back pain with radiation down the

12   legs. Lastly, he opined that she should not be required to work in a cold or damp environment,

13   which would enhance her symptoms.

14         In November 2011, J. Linder, M.D. reviewed Plaintiff's records including Dr. Van Kirk's

15   opinion, Dr. Light's notes, and Plaintiff's case file. Dr. Linder diagnosed Plaintiff with severe

16   disorders of the back. Dr. Linder found that Dr. Van Kirk's assessment of standing and walking

17   for four hours was overly restrictive given the objective findings. He opined that she could stand

18   or walk for six hours and sit for more than six hours on a sustained basis in an eight hour workday.

19   He assessed mostly the same postural limitations except he opined that she could frequently climb

20   ramps and stairs, kneel and crouch. Dr. Linder also assessed the same environmental limitations

21   related to cold and wetness.

22         In March 2012, Dr. Light filled out a brief questionnaire regarding Plaintiff's functional

23   capacity. He opined that Plaintiff's impairments precluded her from frequently lifting ten pounds

24   and occasionally lifting twenty pounds during an eight-hour day. He estimated that she would be

25   able to sit for thirty minutes and stand or walk for less than twenty minutes without rest or support.

26   He further opined that she could do no bending, stooping, crawling, lifting, climbing, or reaching

27   above her head.

28         In April 2012, Plaintiff's case was reviewed by I. Ocrant, M.D., who reviewed Plaintiff's

5

1   file with updated records from Dr. Light. He also completed an RFC assessment. Dr. Ocrant

2   diagnosed Plaintiff with severe disorders of the back and "other unspecified arthropathies." He

3   limited Plaintiff to the same RFC as had Dr. Linder, except he added that she would be limited to

4   occasional reaching overhead on the left.

5        In December 2012, Plaintiff presented to the emergency room via ambulance with

6   complaints of headache. She said she regularly had migraines for twenty years, but that day was

7   worse, however, not the worse she had ever had. She had run out of medication (Percoset) because

8   she had taken an extra dosage. Hospital notes state that she was not in acute distress, and tested

9   positive "seeing black spots," nausea and vomiting, increased back pain, and headache. She tested

10  negative for all other systems, including photophobia. The notes further state that there was no

11  spinal tenderness, she had a steady gait, and no acute motor deficits were detected. Plaintiff's

12  symptoms improved after treatment and she was discharged in a stable condition. Plaintiff had

13  been given medication intravenously. She was given a prescription for Compazine, Motrin, and

14  Zofran with instructions to take as needed. She was instructed to follow up in a few days.

15       In January 2013, Dr. Light completed the same questionnaire as he had in March 2012.

16  However, he did not fully complete the form. He only indicated that she was precluded from

17  performing full-time work at the sedentary level. He referred to an attached report which indicated

18  she had ongoing pain in her left shoulder, migraines, and low back pain. Her examination showed

19  satisfactory sensory, motor, and deep tendon reflexes. He repeated that she did not have insurance.

20       D.  Vocational Expert Testimony

21       At the administrative hearing, the VE classified Plaintiff's past work as ground crew for

22  crop dusting (DOT # 407.663-010, medium, SVP 4). The ALJ asked the VE to assume a

23  hypothetical person limited to light work, with standing and walking limited to four hours in an

24  eight-hour day, required the option to alternate sitting and standing with a total amount of sitting

25  not exceeding six hours in an eight-hour day, could frequently climb ramps or stairs, occasionally

26  climb ladders, ropes, or scaffolds, occasionally stoop, frequently kneel, frequently crouch,

27  occasionally crawl, occasionally reach overhead bilaterally, and must avoid concentrated exposure

28  to extreme cold and wetness. The VE opined that such an individual could perform work other

1   than Plaintiff's past work. The VE testified that the hypothetical person could perform work as an

2   account representative (DOT # 299.687-014, light, SVP 2) or cashier (DOT #211.462-010, light,

3   SVP 2). The VE testified that there were a significant number of available jobs nationwide and in

4   California.

5         The ALJ then directed the VE to assume that the same hypothetical person but who were

6   absent more than one time per month. The VE testified that such absences would preclude all

7   work. The ALJ then directed the VE to assume that the first hypothetical person but would require

8   at least two fifteen-minute breaks in addition to the three breaks permitted by the employer. The

9   VE testified that this limitation would also preclude all work.

10         E.  Disability Determination

11         After considering the evidence, the ALJ found that Plaintiff had not engaged in substantial

12   gainful activity since the alleged onset date of disability. He found that Plaintiff had degenerative

13   disc disease of the lumbar spine and shoulder impairment/possible torn rotator, which significantly

14   limited her ability to perform basic work activities. He also found that Plaintiff had migraines,

15   which did not significantly limit her ability to perform basic work activities. The ALJ found that

16   Plaintiff did not have an impairment that met or medically equaled the severity of a listed

17   impairment. He found that Plaintiff had the RFC to perform "light work" as defined in 20 C.F.R.

18   404.1567(b) with additional limitations. He limited Plaintiff to standing and walking for four

19   hours in an eight-hour day with the requirement of a sit/stand option allowing her to sit or stand

20   alternatively as long as the total amount of sitting did not exceed six hours in an eight-hour day.

21   The ALJ further limited Plaintiff to frequently climb ramps or stairs, occasionally climb ladders,

22   ropes, or scaffolds; occasionally stoop; frequently kneel and crouch; occasionally crawl; and

23   occasionally reach overhead bilaterally. The ALJ also concluded in Plaintiff's RFC analysis that

24   she must avoid concentrated exposure to extreme cold and concentrated exposure to wetness. The

25   ALJ concluded that Plaintiff was unable to perform her past relevant work as a ground crew for

26   crop dusting. However, the ALJ found that there were jobs existing in significant numbers in the

27   national economy that Plaintiff could perform. Hence, he determined that Plaintiff was "not

28   disabled."

1

2      **II.      Legal Standard**

3            A.   The Five-Step Sequential Analysis

4            An individual is considered disabled for purposes of disability benefits if she is unable to

5      engage in any substantial, gainful activity by reason of any medically determinable physical or

6      mental impairment that can be expected to result in death or that has lasted, or can be expected to

7      last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)

8      (3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment(s) must result from

9      anatomical, physiological, or psychological abnormalities that are demonstrable by medically

10     accepted clinical and laboratory diagnostic techniques and must be of such severity that the

11     claimant is not only unable to do her previous work but cannot, considering her age, education,

12     and work experience, engage in any other kind of substantial, gainful work that exists in the

13     national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382a(a)(3)(B), (D).

14           To encourage uniformity in decision making, the Commissioner has promulgated

15     regulations prescribing a five-step sequential process for evaluating an alleged disability. 20

16     C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f).  In the five-step sequential review process, the burden

17     of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five.

18     *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  If a claimant is found to be disabled or

19     not disabled at any step in the sequence, there is no need to consider subsequent steps.  *Id.* at

20     1098–99; 20 C.F.R. §§ 404.1520, 416.920.

21           In the first step of the analysis, the ALJ must determine whether the claimant is currently

22     engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If not, in the

23     second step, the ALJ must determine whether the claimant has a severe impairment or a

24     combination of impairments significantly limiting her from performing basic work activities.  *Id.*

25     §§ 404.1520(c), 416.920(c).  If so, in the third step, the ALJ must determine whether the claimant

26     has a severe impairment or combination of impairments that meets or equals the requirements of

27     the Listing of Impairments, 20 C.F.R. 404, Subpart P, App. 1.  *Id.* §§ 404.1520(d), 416.920(d).  If

28     not, in the fourth step, the ALJ must determine whether the claimant has sufficient RFC, despite

1   the impairment or various limitations to perform his past work. *Id*. §§ 404.1520(f), 416.920(f).  If

2   not, in step five, the burden shifts to the Commissioner to show that the claimant can perform

3   other work that exists in significant numbers in the national economy.  *Id*. §§ 404.1520(g),

4   416.920(g).

5            B.  Standard of Review

6          Congress has provided a limited scope of judicial review of the Commissioner's decision

7   to deny benefits under the Act.  The record as a whole must be considered, weighing both the

8   evidence that supports and the evidence that detracts from the Commissioner's decision.

9   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks

10   omitted).  In weighing the evidence and making findings, the Commissioner must apply the proper

11   legal standards.  *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  If an ALJ

12   applied the proper legal standards and the ALJ's findings are supported by substantial evidence,

13   this Court must uphold the ALJ's determination that the claimant is not disabled.  *See, e.g., Ukolov*

14   *v. Barnhart*, 420 F.3d 1002, 104 (9th Cir. 2005); *see also* 42 U.S.C. § 405(g).  Substantial

15   evidence means "more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of*

16   *Soc. Sec.*, 528 F.3d 1194, 1998 (9th Cir. 2008).  It is "such relevant evidence as a reasonable mind

17   might accept as adequate to support a conclusion."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

18   2005). Where the evidence as a whole can support either outcome, the Court may not substitute its

19   judgment for the ALJ's, rather, the ALJ's conclusion must be upheld. *Id*.

20   **III.**   **Discussion**

21         Plaintiff raises several issues for review in this appeal. Plaintiff contends that the ALJ erred

22   at step two of the sequential analysis for finding Plaintiff's migraines as non-severe. Plaintiff

23   further contends that the ALJ erred in his RFC analysis for improperly discrediting medical

24   opinions, Plaintiff's symptom testimony, and laywitness testimony.

25        A.  Step Two – Severity

26        Under the regulations, the procedure at step two is as follows:

27        At the second step, we consider the medical severity of your impairment(s). If you do not
           have a severe medically determinable physical or mental impairment that meets the

28        duration requirement in § 404.1509, or a combination of impairments that is severe and

meets the duration requirement, we will find that you are not disabled. ... If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.

20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c).

Thus, at step two, a claimant can only be prejudiced by a finding that he has no severe impairments at all; otherwise, he advances to the next steps. The later steps do not make use of the step two finding. Instead, the ALJ must consider all of Plaintiff's limitations, again and in even greater depth. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1233 (9th Cir. 2011) (at step three, ALJ must consider "the combined effect of [Plaintiff's] limitations, both severe and non-severe," to determine whether they meet or equal a listing); 20 CFR 404.1545(e) ("we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity" for use at steps four and five). In other words, the impairments identified at step two are not intended to be a comprehensive survey. Step two is simply "a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996).

In support of her argument that the ALJ erroneously found her migraines as non-severe, Plaintiff offers that Plaintiff had a history of headaches, which increased after October 2010. She regularly took medication[1] for migraines, including a barbiturate beginning in January 2012. Her subjective symptom testimony was consistent with migraines. Plaintiff argues that the ALJ erred by not addressing Plaintiff's complaints when considering her migraines at step two.

Here, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine and shoulder impairment were severe impairments that significantly limited her ability to do basic work activities. Thus, Plaintiff passed the step two "screening test" and advanced to the next steps in the sequential evaluation. The ALJ specifically considered Plaintiff's migraines but found the impairment to be non-severe because there were minimal records of any headache after the alleged onset date, other than one visit to the emergency room for a headache in December 2012. The ALJ

---

[1] In this section, Plaintiff casually adds that the ALJ erred in failing to develop the record with regard to her headaches. This argument is misled. The ALJ stated at the hearing that, because there were various prescriptions at various times, he was not sure what medications Plaintiff was taking for her headaches. He requested that counsel submit a list of prescription refill information, which counsel submitted. The ALJ's duty to develop the record was not triggered.

does not dispute that Plaintiff had migraines and that she was treated and prescribed medication for the same. However, the ALJ notes that the medical record does not support a finding that the headaches are severe, such that they have a significantly limited her ability to perform basic work activities. None of the medical opinions assessed any functional limitations due to her headaches or migraines. Dr. Light is the only physician who mentioned headaches, but he still did not assess functional limitations because of them. In his opinion rendered after Plaintiff's emergency room visit, he indicated that her primary impairments were ongoing back pain and left-shoulder pain. In his prior functional capacity assessment, he did list that migraines were a primary impairment, but his limitations were entirely based on back and shoulder pain. Plaintiff's own testimony regarding the debilitating effects of her migraines is not sufficient to find an impairment severe because the ALJ properly discredited her subjective symptom testimony, which will be discussed below.

Plaintiff has not met her burden at step-two to prove that her impairments significantly limited her ability to do basic work activities. The ALJ properly found that her migraines were non-severe at step two.

B.  RFC

Plaintiff contends that the ALJ's RFC analysis was flawed because he improperly discredited Dr. Light's opinion, partially discredited Dr. Van Kirk's opinion, and discredited Plaintiff's symptom testimony and lay witness testimony.

1.  *Weighing Medical Evidence*

Physicians render two types of opinions in disability cases: (1) medical, clinical opinions regarding the nature of the claimant's impairments and (2) opinions on the claimant's ability to perform work. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). An ALJ is "not bound by an expert medical opinion on the ultimate question of disability." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); S.S.R. 96-5p, 1996 SSR LEXIS 2.

Three types of physicians may offer opinions in social security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). A treating

1    physician's opinion is generally entitled to more weight than the opinion of a doctor who

2    examined but did not treat the claimant, and an examining physician's opinion is generally entitled

3    to more weight than that of a non-examining physician. *Id*. The Social Security Administration

4    favors the opinion of a treating physician over that of nontreating physicians. 20 C.F.R. §

5    404.1527; *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician is employed to

6    cure and has a greater opportunity to know and observe the patient. *Sprague v. Bowen*, 812 F.2d

7    1226, 1230 (9th Cir. 1987). Nonetheless, a treating physician's opinion is not conclusive as to

8    either a physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747,

9    751 (9th Cir. 1989).

10            Once a court has considered the source of a medical opinion, it considers whether the

11    Commissioner properly rejected a medical opinion by assessing whether (1) contradictory

12    opinions are in the record; and (2) clinical findings support the opinions. The ALJ may reject the

13    uncontradicted opinion of a treating or examining medical physician only for clear and convincing

14    reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 831. The controverted

15    opinion of a treating or examining physician can only be rejected for specific and legitimate

16    reasons supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043

17    (9th Cir. 1995). "Although the contrary opinion of a non-examining medical expert does not alone

18    constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it

19    may constitute substantial evidence when it is consistent with other independent evidence in the

20    record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001), *citing Magallanes*, 881 F.2d

21    at 752. The ALJ must set forth a detailed and thorough factual summary, address conflicting

22    clinical evidence, interpret the evidence and make a finding. *Magallanes*, 881 F.2d at 751-55. The

23    ALJ need not give weight to a conclusory opinion supported by minimal clinical findings. *Meanel*

24    *v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Magallanes*, 881 F.2d at 751. The ALJ must tie the

25    objective factors or the record as a whole to the opinions and findings that he or she rejects.

26    *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

27            a.   <u>Dr. Light</u>

28            Plaintiff argues that Dr. Light's opinion should be afforded the greatest weight because Dr.

1    Light was Plaintiff's treating physician from 2006-2012, and the ALJ did not give adequate

2    reasons to discredit it. However, substantial evidence supports the ALJ's determination to

3    discredit Dr. Light's opinion.

4         As discussed above, Dr. Light opined in March 2012 that Plaintiff could only sit for thirty

5    minutes and stand or walk for under twenty minutes in an eight-hour period. He opined that she

6    could not do any bending, stooping, lifting, or finger manipulation. The ALJ gave "reduced

7    weight" to Dr. Light's findings because they were contained in a form consisting largely of

8    checked boxes without further explanation, they were inconsistent with Plaintiff's activities of

9    daily living, and they contrasted sharply and drastically with the other evidence of record.

10        The record provides substantial evidence to support the ALJ's position. First, the ALJ's

11   conclusion that Dr. Light's opinion is not supported by the record is reasonable.  Dr. Light's

12   opinion was rendered in March 2012. Plaintiff had been seeing Dr. Light consistently for years at

13   that point, including on March 7, 2012. Plaintiff testified she lived in Westley, and had her father

14   or a friend take her to see Dr. Light in San Francisco every other month. This distance is

15   considerable. Dr. Light's notes prior to March 2012 noted that Plaintiff experienced pain and he

16   would prescribe medication or inject medication into her back or shoulder. He usually noted

17   satisfactory sensory, motor, and deep tendon reflexes and suggested a follow-up in four to eight

18   weeks.

19        In October 2011, Dr. Van Kirk examined Plaintiff and found her to be in no acute distress.

20   She was able to walk around the room, get on and off the examination table, squat and take a few

21   steps, and forward flex. Dr. Van Kirk found mostly normal range of motion and limited her to

22   occasional postural limitations. These findings are in contrast with Dr. Light's findings, which

23   were not based on a complete examination, that Plaintiff could do no bending or crouching.

24   Indeed, Dr. Light's opinion is brief, conclusory, and inadequately supported by clinical findings.

25   For example, there is no support anywhere in the record indicating that she could do no finger

26   manipulation, and Dr. Light does not offer any support for that limitation. Further, Dr. Van Kirk

27   and Drs. Linder and Ocrant's contradictory opinions are supported by the record.

28        The ALJ set forth the ways in which Dr. Light's opinion was unsupported by the record

1   and was contradicted by other opinions which were supported by the record. The ALJ set forth a

2   detailed and thorough factual summary of Plaintiff's medical history, addressed the conflicting

3   clinical evidence, interpreted the evidence and made a finding that Plaintiff had functional

4   limitations but not as severe as indicated in Dr. Light's opinion. Findings that Dr. Light's opinion

5   was conclusory and not supported by the record and that Drs. Van Kirk, Linder, and Ocrant's

6   contradictory opinions were supported by the record are sufficient specific and legitimate reasons

7   supported by substantial evidence in the record to discount Dr. Light's opinion.

8           The ALJ also discussed Plaintiff's daily activities of caring for dogs, grocery shopping,

9   and watching television, which are not incredibly vigorous, but indicate some ability to lift, stoop,

10  crouch, reach, etc. Plaintiff also testified at the hearing that she could reach somewhat, that she

11  lived alone and would alternate putting ice and heat on her legs every day. This also indicates

12  some postural capacity. This contradictory evidence also supports the ALJ's rejection of Dr.

13  Light's opinion that she was incapable of performing any postural activities. Hence, the ALJ's

14  reasons to discredit Dr. Light's opinion were sufficiently specific and legitimate and supported by

15  substantial evidence in the record.

16                    b.  Dr. Van Kirk

17          Plaintiff argues that the ALJ discredited part of Dr. Van Kirk's opinion because he found

18  that Plaintiff was limited to *occasional* kneeling and crouching, occasional pushing and pulling,

19  and required rest of she experienced progressive pain, while the ALJ determined that Plaintiff was

20  limited to *frequent* kneeling and crouching, and did not limit her pushing and pulling or require

21  rest breaks.

22          The ALJ gave Dr. Van Kirk's opinion substantial weight. His RFC finding was in some

23  ways more restrictive than Dr. Van Kirk's opinion, and in some ways less restrictive. The RFC

24  finding was less restrictive related to kneeling, crouching, and pushing and pulling. The RFC

25  finding was more restrictive because it limited Plaintiff to occasional overhead reaching on the

26  left, a limitation not assessed by Dr. Van Kirk. The ALJ also required that Plaintiff have the option

27  to sit or stand alternatively, which accommodated her need for sitting breaks for her back pain as

28  needed.

Here, the ALJ did not discredit Dr. Van Kirk's opinion –he gave it substantial weight. He also gave Drs. Linder and Ocrant substantial weight, with greater weight going to Dr. Ocrant, who limited Plaintiff's overhead reaching on the left. An RFC "must be based on *all* of the relevant evidence in the case record," including medical history, medical source statements daily activities, lay evidence. SSR 96-8p; 20 CFR 404.1545 ("[The ALJ] will assess your residual functional capacity based on all of the relevant medical and other evidence."). The ALJ assessed Plaintiff's RFC based on all of the evidence. He discussed Dr. Light's opinion, Dr. Van Kirk's opinion, Drs. Linder and Ocrant's opinions, other medical evidence, Plaintiff's activities, Plaintiff's testimony, and third-party statements. In reviewing all of the relevant evidence in the case record, the ALJ properly made an RFC determination, which is supported by substantial evidence in the record. Plaintiff has not met her burden to demonstrate that the RFC is improper.

### C. Plaintiff's Credibility

The Ninth Circuit established two requirements for a claimant to present credible symptom testimony: the claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986). The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

The Commissioner may not discredit a claimant's testimony on the severity of symptoms merely because it is unsupported by objective medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). However, an ALJ is entitled to consider whether there is a lack of medical evidence to corroborate a claimant's subjective symptom testimony so long as it is not the only reason for discounting her testimony. *Burch v. Barnhart*, 400 F.3d 676, 680-681 (9th Cir. 2005).

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional requirement. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), *quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834, *quoting Varney v.*

1    *Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir. 1988).  He or she must set

2    forth specific reasons for rejecting the claim, explaining why the testimony is unpersuasive.  *Orn*,

3    495 F.3d at 635.  *See also Robbins v. Social Security Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).

4    The credibility findings must be "sufficiently specific to permit the court to conclude that the ALJ

5    did not arbitrarily discredit claimant's testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th

6    Cir. 2002).

7        When weighing a claimant's credibility, the ALJ may consider the claimant's reputation

8    for truthfulness, inconsistencies in claimant's testimony or between his testimony and conduct,

9    claimant's daily activities, claimant's work record, and testimony from physicians and third

10   parties about the nature, severity and effect of claimant's claimed symptoms.  *Light v. Social*

11   *Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ may consider "(1) ordinary

12   techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent

13   statements concerning the symptoms, and other testimony by the claimant that appears less than

14   candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a

15   prescribed course of treatment; and (3) the claimant's daily activities."  *Tommasetti v. Astrue*, 533

16   F.3d 1035, 1039 (9th Cir. 2008), *quoting Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996).  If the

17   ALJ's finding is supported by substantial evidence, the Court may not second-guess his or her

18   decision.  *Thomas*, 278 F.3d at 959.

19       Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably

20   be expected to cause some of the alleged symptoms, but Plaintiff's statements concerning the

21   intensity, persistence, and limiting effects of the symptoms were not credible to the extent that

22   they were inconsistent with the ALJ's RFC analysis. The ALJ based his credibility determination

23   on Plaintiff's activities of daily living, the medical record, and demeanor while testifying. Plaintiff

24   argues that the ALJ failed to provide legally sufficient reasons to reject her subjective symptoms

25   testimony. The ALJ's credibility determination was legally sufficient and supported by substantial

26   evidence.

27       The ALJ first discussed Plaintiff's daily activities and noted that they were not as limited

28   as expected considering her complaints of disabling symptoms. The evidence shows that Plaintiff

16

cared for two dogs, shopped for groceries, and watched television. She also lived alone and was able to apply ice and heat alternatively to her legs. She was able to prepare meals for herself and get dressed. In April 2010, Plaintiff played golf and hurt her hip. The ALJ noted that her attempt at golf strongly suggested that Plaintiff's daily activities had at times been greater than reported. While these activities alone may not require an affirmative finding that she is able to sustain competitive work, they cast doubt on her credibility and support the ALJ's finding that her symptoms were not as disabling as she testified.

The ALJ also discussed that the alleged severity of Plaintiff's symptoms are unsupported by the objective medical evidence. The ALJ discussed the medical evidence, which was summarized above in this order. The ALJ's RFC assessment based on Drs. Van Kirk, Linder, and Ocrant's opinions and the other relevant evidence in the record was supported by substantial evidence. Plaintiff's assertion that she is unable to do any work is not supported by a relatively normal consultative examination, and conservative treatment and normal examinations over several years. After presenting to the emergency room for headaches, Plaintiff's tests were unremarkable. Dr. Light continued to suggest that she take her medication judiciously and discussed reducing her medication in 2012 and 2013.

The ALJ also discussed Plaintiff's demeanor while testifying. He emphasized that this was only one reason among many to assess her credibility, and was not determinative.  Observation of a witness' demeanor is an ordinary technique of credibility evaluation. The ALJ noted that her demeanor was generally unpersuasive. In addition, a review of her testimony reveals contradicting, somewhat jumbled answers –she first said that she had no pain when she took medication but then later said that the medication reduced her back pain from ten-out-of-ten to seven-out-of-ten, and that she had constant pain in her leg which was not reduced "much" with medication. She testified that her back pain level is at the level of "screaming and at an emergency room" when she does not take her pain medication, but has reported to the emergency room once for a headache. Plaintiff also reached forward with her arms while testifying that she could not reach forward. She testified that that she could reach out and grab something off of a table, but she could not reach forward to get things off of assembly belt at all because her arm would pop out.

1    In his credibility analysis, the ALJ discussed Plaintiff's medically determinable

2  impairments including her back and shoulder impairments and migraines. The ALJ found that

3  Plaintiff's daily activities reflected significant functioning, the objective findings in Plaintiff's

4  medical record did not support her symptom testimony, and that her demeanor was unpersuasive.

5  Taken together, these reasons are sufficiently specific, legally permissible grounds which are

6  supported by substantial evidence in the record to discount Plaintiff's credibility.

7        *D.  Lay Witness Statements*

8    Plaintiff's father and friend submitted statements, which the ALJ considered and gave no

9  significant weight. Plaintiff argues that the reasons given by the ALJ to give no weight to the lay

10  witness statements were not legally sound. The ALJ discounted the lay witness statements for

11  being inconsistent with the preponderance of the medical evidence, and for having questionable

12  accuracy because they are likely to reflect Plaintiff's symptomatological exaggerations and tend to

13  be colored by affection.

14    Lay witness testimony is competent evidence to which the ALJ, if he wishes to discount

15  lay witness testimony, must give reasons germane to each witness. *Stout v. Comm'r, Soc. Sec.*

16  *Admin.*, 454 F.3d 1050 (9th Cir. 2006). The Ninth Circuit has held that inconsistency with medical

17  evidence constitutes a legitimate reason for discrediting the testimony of lay witnesses. *See*

18  *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984); *see also Bayliss v. Barnhart*, 427 F.3d

19  1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). To the extent that

20  the lay witness statements were of the same general nature as the subjective complaints from the

21  plaintiff's testimony, the ALJ's legally sufficient reasons for rejecting the plaintiff's subjective

22  symptom testimony also constituted legally sufficient reasons for rejecting the lay witness

23  statements. *See Valentine v. Commissioner, Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

24  Further, an ALJ's failure to comment on lay witness testimony is harmless where the same

25  evidence that the ALJ cited in discrediting the claimant's testimony also discredits the lay witness'

26  claims. *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012).

27    The ALJ specifically discussed statements supplied by Plaintiff's father and Plaintiff's

28  friend. Plaintiff's father stated that she was "always in back pain" which limited her and made her

feel depressed and isolated. Plaintiff's friend Judy Quintana observed chronic pain and bouts of depression.  Plaintiff's sister-in-law observed that Plaintiff was consistently in pain and struggled to perform ordinary tasks. She observed that Plaintiff's back issues prevented her from walking correctly, going from sitting to standing, and simple household tasks. She also wrote that Plaintiff's migraines were often and severe, and caused her to be extremely ill and unable to get out of bed. She also testified that her shoulder limited her ability to perform tasks.

As discussed above in this order, the ALJ discounted Plaintiff's symptom testimony partly because it was inconsistent with medical findings and opinions. These lay witness statements relate similar symptom testimony as Plaintiff's testimony. The ALJ's discussion in rejecting Plaintiff's symptom testimony for inconsistency with the medical findings is also sufficient for rejecting the lay witness statements. Hence, the ALJ did not err in discounting the lay witness statements for inconsistency with the medical findings.

**IV.**    **Conclusion and Order**

For the foregoing reasons, the Court finds that the ALJ applied appropriate legal standards and that substantial credible evidence supported the ALJ's determination that Plaintiff was not disabled.  Accordingly, the Court hereby DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff.

IT IS SO ORDERED.

Dated:   __**August 6, 2015**__                        _____**/s/ Sandra M. Snyder**
                                        UNITED STATES MAGISTRATE JUDGE